# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEFINA PUNAY, <br><br> Plaintiff, <br><br> v. <br><br> PNC MORTGAGE; CLEAR RECON CORP.; and DOES 1-10, inclusive, <br><br> Defendants. | CASE NO. 16cv2780-WQH-NLS <br><br> ORDER |

HAYES, Judge:

The matter before the court is the motion to dismiss filed by Defendant PNC Bank, National Association doing business as PNC Mortgage ("PNC"). (ECF No. 4).

## I. Background

On August 16, 2016 Plaintiff Josefina Punay filed a complaint in San Diego County Superior Court against Defendants PNC Mortgage, Clear Recon Corp, and Does 1-10. (ECF No. 1 at 5). The complaint alleges six causes of action: (1) violation of California Civil Code section 2923.6, (2) promissory estoppel, (3) negligent misrepresentation, (4) violation of California Civil Code section 2924.10, (5) violation of California Civil Code section 2923.7, and (6) violation of California Business and Professions Code section 17200. *Id.*

On November 10, 2016, PNC filed a notice of removal to this Court pursuant to 28 U.S.C. § 1441(b). PNC stated that this Court properly has jurisdiction on diversity grounds under 28 U.S.C. § 1332. *Id.* at 1-2.

On November 28, 2016, PNC filed a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 4). On December 27, 2016, Punay filed a response in opposition. (ECF No. 6). On December 28, 2016, PNC filed a reply. (ECF No. 7). On April 27, 2017, PNC filed a supplemental document titled "Request for Ruling on Motion to Dismiss Plaintiff's Complaint." (ECF No. 9).

**II. Allegations of the Complaint**

"Plaintiff owns and currently resides in the subject real property, 17070 Garden Path Drive, San Diego, CA 92127." (ECF No. 1 at ¶ 2). PNC is "a business organization of unknown form . . . servic[ing] single-family residential mortgages . . . including the first lien residential mortgage loan for this Subject Property." *Id.* at ¶ 4. Punay purchased the subject property in September 2006. *Id.* at ¶ 14. "On or about October of 2007, Plaintiff began to experience financial hardship when she and her husband were laid off from their jobs and struggled to earn sufficient income." *Id.* at ¶ 15.

"On January 3, 2008, CLEAR RECON CORP issued a Notice of Default on the Subject Property." *Id.* at ¶ 16. "[O]n March 18, 2008, Plaintiff filed a Chapter 13 bankruptcy to establish a payment plan to prevent foreclosure on the Subject Property. The bankruptcy case number is 3:08-bk-2154." *Id.* at ¶ 17. "In 2009, Plaintiff contacted National City Bank to request modification assistance because she could not afford to continue with the Chapter 13 bankruptcy." *Id.* at ¶ 18. "Soon thereafter, Plaintiff learned that National City Bank transferred her loan to PNC." *Id.* at ¶ 19. "Plaintiff attempted to contact PNC numerous times to request help but PNC repeatedly failed to reply." *Id.* at ¶ 20.

"On or about February 2010, Plaintiff . . . sent a completed application for a loan modification under the Home Affordable Modification Program ('HAMP') to PNC for Loan Number 004867845 to request hardship assistance." *Id.* at ¶ 21. "On April 7, 2010, Plaintiff received a letter from PNC stating that her hardship assistance request had been denied due to insufficient income." *Id.* at ¶ 23. "Shortly thereafter, Plaintiff

received [a] Notice of Trustee's Sale that was recorded on April 30, 2010." *Id.* Punay filed a second Chapter 13 bankruptcy on May 19, 2010 in order to stop the foreclosure. *Id.* at ¶ 24. The bankruptcy was dismissed for failure to make plan payments and Punay filed a third Chapter 13 bankruptcy on August 29, 2013. *Id.* at ¶ 25.

"[O]n October 1, 2013, Plaintiff resubmitted the HAMP loan modification to PNC. PNC's representative, Raina Watkins, orally told Plaintiff that her application was denied due to incompleteness." *Id.* at ¶ 26. On November 13, 2013, Punay resubmitted her application but did not receive a written acknowledgment that it was received. *Id.* at ¶ 27. PNC representative Angela C. "orally informed Plaintiff that her application was denied due to being incomplete." *Id.* "Plaintiff never received a written denial from the bank." *Id.*

"On September 10, 2015, [Punay] received a Notice of Default on the property." *Id.* at ¶ 28. "In December 2015, Plaintiff resubmitted a loan modification application." *Id.* at ¶ 29. "The application was denied due to incomplete documents. Plaintiff never received a written denial from the bank." *Id.* at ¶ 30. Punay filed a fourth Chapter 13 bankruptcy on January 7, 2016. *Id.* at ¶ 31.

"Plaintiff resubmitted a complete loan modification application on June 2, 2016." *Id.* at ¶ 32. "While the application was under review, she continued to receive foreclosure notices. A Notice of Sale was posted on June 6, 2016 for the sale date of July 11, 2016." *Id.* at ¶ 33. "Throughout the month of June, Plaintiff spoke with [PNC] representative Sandra several times. Each time Plaintiff was assured that PNC had received her application and she did not need to submit additional documents." *Id.* at ¶ 35. "On or about June 23, 2016, Plaintiff called PNC and spoke with representative Sandra who confirmed that the application was complete." *Id.* at ¶ 36. "During the phone call Sandra assured Plaintiff that she simply needed to wait and no further actions were necessary. Sandra also informed Plaintiff that the sale date had been postponed to a later date, which would be specified at a later time depending on the final decision regarding Plaintiff's application." *Id.* at ¶ 37. "During the call, Sandra assured Plaintiff

that PNC would likely have a final decision by the end of the month, within three weeks." *Id.* at ¶ 38. "Plaintiff alleges that the June 23, 2016 conversation with PNC representative, Sandra, constitutes a clear and unambiguous promise that the loan modficiation was complete and under review." *Id.* at ¶ 60. "Plaintiff justifiably relied upon PNC representative Sandra's verbal promise that her application was complete, in good standing and no further action was necessary." *Id.* at ¶ 61. "Plaintiff did not receive any written acknowledgment or denial after the conversation." *Id.* at ¶ 39.

"Subsequent to the conversation with Sandra, Plaintiff received a phone call from a different representative from PNC, Mike, who orally told her that the modification documents had not been completed." *Id.* at ¶ 40.

"From August 2012 to June 2016, PNC changed Plaintiff's point of contact about five times and this made it difficult for Plaintiff to obtain updates on her loan modification applications." *Id.* at ¶ 42. "Plaintiff was continuously being bounced around from contact to contact and received conflicting information from everyone she spoke with." *Id.* PNC failed "to provide an individual or team of personnel who is knowledgeable of Plaintiff's situation because each representative assigned to Plaintiff's case was unaware of the status of her loan application." *Id.* at ¶ 93. PNC failed to "to coordinate receipt of all documents associated with Plaintiff's foreclosure prevention alternative and did not notify her whether any documents were missing." *Id.* at ¶ 94. "Plaintiff suffered insurmountable harm by being deprived of a knowledgeable [single point of contact] to coordinate a permanent loan modification which Plaintiff met the qualifications for." *Id.* at ¶ 95.

"To date Plaintiff has yet to receive written acknowledgment or updates regarding the status of her application." *Id.* at ¶ 41. "Plaintiff is injured because PNC's failure to state whether or not documentation is received prevents her from being evaluated for a loan modification." *Id.* at ¶ 87.

PNC "recorded a Notice of Sale on June 6, 2016 with the sale date for July 11, 2016 while Plaintiff's application was under review." *Id.* at ¶ 53. The sale date for the

Subject Property is scheduled for August 22, 2016." *Id.* at ¶ 46. "[A] trustee's sale has been recorded and if executed a trustee's sale extinguishes certain remedies available to homeowner plaintiffs under the California Homeowner Bill of Rights." *Id.* at ¶ 55.

"As to harm, Plaintiff extended time, money, and effort on pursuit of this foreclosure alternative. It is readily apparent that PNC deceived Plaintiff into thinking she could qualify for a permanent modification when in actuality PNC repeatedly misinformed Plaintiff about the status of her application and sale date." *Id.* at ¶ 63.

Punay's prayer for relief requests both damages and injunctive relief, including that Defendants "conduct a meaningful review of Plaintiff's permanent loan modification request." *Id.* at 21.

**III. Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a) provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)). When considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim

entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

**IV. Discussion**

**A. Homeowner's Bill of Rights, California Civil Code Section 2923.6**

PNC contends that Punay fails to state a claim for a violation of California Civil Code section 2923.6 of the California Homeowner's Bill of Rights ("HBOR"). PNC contends that, pursuant to California Civil Code section 2923.6(g), it had no duty to evaluate the latest loan modification application because Punay had already "been evaluated or afforded a fair opportunity to be evaluated for a first lien loan modification." (ECF No. 4-1 at 5). PNC further contends that the complaint does not allege that the purported violation of section 2923.6 was material. *Id.* at 6.

Punay contends that "PNC violated section 2923.6 for 'dual-tracking' when it recorded a Notice of Sale on June 6, 2016 while in the process of reviewing [Punay's application] for a loan modification." (ECF No. 6 at 8). Punay contends that PNC had a duty to evaluate Punay's latest application because Punay experienced a material change in her financial circumstances since the prior loan modification application. *Id.* at 9.

The Homeowner's Bill of Rights provides,

> (c) If a borrower submits a complete application for a first lien loan modification offered by, or through the borrower's mortgage servicer, mortgagee trustee, beneficiary or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien modification application is pending.
> ...
> (g) In order to minimize the risk of borrowers submitting multiple applications for first lien loan modifications for the purpose of delay, the mortgage servicer shall not be obligated to evaluate applications from borrowers who have already been evaluated or afforded a fair opportunity to be evaluated for a first lien loan modification prior to January 1, 2013, or who have been evaluated or afforded a fair opportunity to be evaluated consistent with the requirements of this section, unless there has been a material change in the borrower's financial circumstances since the date of the borrower's previous application and that change is documented by the borrower and submitted to the mortgage servicer.

Cal. Civ. Code § 2923.6.

Punay alleges that she submitted an application for a first lien loan modification

on February 2010, which was denied due to insufficient income in April 2010. (ECF No. 1 at ¶ 21-23). Punay alleges that she submitted loan modifications to PNC in October 2013, November 2013, and December 2015, which were denied by PNC as incomplete. (ECF No. 1). Punay had "already been evaluated or afforded a fair opportunity to be evaluated for a first lien loan modification prior to January 1, 2013 or . . . [had] been evaluated or afforded a fair opportunity to be evaluated consistent with the requirements of this section" at the time she filed the June 2, 2016 loan modification application. *See* Cal. Civ. Code. § 2923.6(g). PNC was not obligated to evaluate the application unless there had been a material change in Punay's financial circumstances since the date of her previous application and Punay had documented and submitted that change to PNC. *Id.* Punay contends that her allegation that she experienced "a significant increase in expenses caused by Plaintiff's children attending college" in 2013 constitutes a material change in financial circumstances under section 2923.6(g). (ECF No. 1 at ¶ 26; ECF No. 6 at 9). Punay does not allege that she documented and submitted to PNC any material change in financial circumstances. *See also Mann v. Bank of America, N.A.*, No. 5:13-cv-02293-CAS(DTBx), 2014 WL 495617, *3-4 (C.D. Cal. Feb. 3, 2014); *Ware v. Bayview Loan Servicing, LLC*, No. 13-CV-1310 JLS NLS, 2013 WL 6247236, at *5 (S.D. Cal. Oct. 29, 2013). Under the facts alleged in the complaint, PNC was not obligated to evaluate the June 2016 application. The Court concludes Punay fails to state a claim for a violation of California Civil Code section 2923.6 by PNC.

### B. Promissory Estoppel

PNC contends that Punay fails to state a claim for promissory estoppel because the complaint lacks specific factual allegations of a promise by PNC. PNC contends that the complaint does not allege a promise that the June 2016 loan modification application was complete or a promise that PNC would review or grant the loan modification application. (ECF No. 4-1 at 6-7). PNC contends that the complaint does not contain specific factual allegations of reliance on PNC's alleged promise. *Id.* at 7.

PNC contends that the complaint does not contain specific factual allegations that Punay suffered pecuniary damages because there are no allegations that the foreclosure sale has taken place. *Id.*

Punay contends that the June 23, 2016 phone conversation constituted a "clear and unambiguous" promise "that the sale date was postponed and Plaintiff was not at risk of foreclosure." (ECF No. 6 at 10). Punay contends that PNC's representative "told Plaintiff not to take any action until PNC made a decision regarding her loan modification application because her application was 'complete' and under review." *Id.* Punay contends that she detrimentally relied on PNC's instructions and changed her position for the worse "by forbearance of any action, including pursuit of alternative options, due to PNC's repeated assurances that the sale date was postponed and Plaintiff was not at risk of foreclosure." *Id.* Punay contends that she alleged damages by including "the extended time, money, and effort she expended to pursue this foreclosure alternative rather than another." *Id.*

"The doctrine of promissory estoppel 'make[s] a promise binding under certain circumstances, without consideration in the usual sense of something bargained for and given in exchange.'" *Garcia v. World Sav., FSB*, 107 Cal. Rptr. 3d 683, 691-92 (Ct. App. 2010) (citing *Youngman v. Nevada Irrigation Dist.*, 449 P.2d 462 (Cal. 1969)). "Under this doctrine a promisor is bound when he should reasonably expect a substantial change of position, either by act or forbearance, in reliance on his promise, if injustice can be avoided only by its enforcement." *Id.* "The elements of a promissory estoppel claim are (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." *US Ecology, Inc. v. State*, 28 Cal. Rptr. 3d 894, 905 (Ct. App. 2005) (citing *Laks v. Coast Fed. Savs. & Loan Ass'n*, 131 Cal. Rptr. 836, 839 (Ct. App. 1976)) (internal quotations omitted).

Punay's claim for promissory estoppel is predicated on allegations that during a

telephone call on June 23, 2016, a PNC representative named Sandra "confirmed" that Punay's loan modification application was complete and "assured Plaintiff that she simply needed to wait and no further actions were necessary." *Id.* at ¶¶ 26, 37, 60-62. Punay alleges, "Sandra also informed Plaintiff that the sale date had been postponed to a later date, which would be specified at a later time depending on the final decision regarding Plaintiff's application." *Id.* at ¶ 37. Punay alleges that she "justifiably relied upon PNC representative Sandra's verbal promise that her application was complete, in good standing, and no further action was necessary." *Id.* at ¶ 61. Punay alleges that the "continuous assurances" caused her to believe that she was not at risk of foreclosure. *Id.* at ¶ 62. Even assuming these statements are sufficient to constitute a clear and unambiguous promise, Punay fails to allege facts sufficient to support a reasonable inference that she suffered an injury due to reliance on any alleged promise by PNC. The allegations of the complaint reflect that the sale date was postponed. The Notice of Sale posted on June 6, 2016 states that the sale date was scheduled for July 11, 2016. *Id.* at ¶ 33. The complaint alleges that the sale date for the Subject Property is scheduled for August 22, 2016. *Id.* at ¶ 46. The complaint does not contain any allegations that a foreclosure sale has taken place. The complaint alleges that a "trustee's sale has been recorded" but not yet executed. *Id.* at ¶ 55. Punay's allegation that she "extended time, money and effort on pursuit of this foreclosure alternative" does not contain sufficient factual material to permit a reasonable inference that Punay suffered harm due to her reliance on any alleged promise by PNC. The Court concludes that the facts alleged in the complaint are insufficient to state a claim for promissory estoppel.

### C. Negligent Misrepresentation

PNC contends that the negligent misrepresentation claim fails because PNC owed no duty to Punay during the application process. PNC contends that Punay fails to allege a misrepresentation, justifiable reliance, or damages. (ECF No. 4-1 at 7-9).

Punay contends that PNC owed Punay a duty to process the application with due

care and the duty to not make material misrepresentations of facts while reviewing the June 2016 loan modification application. (ECF No. 6 at 11). Punay contends that PNC breached this duty when it materially misrepresented the status of her application by assuring Punay that the application was complete and that she did not need to take action because the July 11, 2016 foreclosure date had been postponed. *Id.* at 12.

Claims for negligent misrepresentation must satisfy the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b). *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal.2003); *see also Lorenz v. Sauer*, 807 F.2d 1509, 1511-12 (9th Cir.1987) ("Under California law, negligent misrepresentation is a species of actual fraud.") (citation omitted). Pursuant to Federal Rule of Civil Procedure 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

To allege a cause of action for negligent misrepresentation, Punay must plead (1) the misrepresentation of a past or existing material fact; (2) without reasonable ground for believing it to be true; (3) with intent to induce another's reliance on the fact misrepresented; (4) justifiable reliance on the misrepresentation; and (5) resulting damage. *Wells Fargo Bank, N.A. v. FSI, Financial Solutions, Inc.*, 127 Cal. Rptr. 3d 589 (Ct. App. 2011) (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Cambridge Integrated Servs. Grp., Inc.*, 89 Cal. Rptr. 3d 473, 483 (Ct. App. 2009)). Under California law, a negligent representation claim requires the existence of a duty owed by the defendant. *See Eddy v. Sharp*, 245 Cal. Rptr. 211, 213 (Ct. App. 1988) ("As is true of negligence, responsibility for negligent misrepresentation rests upon the existence of a legal duty . . . owed by a defendant to the injured person."); *see also Jackson v. Fischer*, 931 F. Supp. 2d 1049, 1068 (N.D. Cal. 2013); *Hunt v. Wells Fargo Bank, NA*, 576 F. App'x 693, 694 (9th Cir. 2014). "The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide." *Vasquez v. Residential Invs., Inc.*, 12 Cal. Rptr. 3d 846, 852 (Ct. App. 2004). A court may consider various factors, among which are "the extent to which the

transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm." *Biakanja v. Irving*, 320 P.2d 16, 19 (1958).

"[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Sav. & Loan Assn.*, 283 Cal. Rptr. 53, 56 (Ct. App. 1991); *see also Diunugala v. JP Morgan Chase Bank, N.A.*, No. 12CV2106-WQH-NLS, 2013 WL 5568737, at *3 (S.D. Cal. Oct. 3, 2013). Punay relies on *Lueras v. BAC Home Loans Servicing, LP*, 163 Cal. Rptr. 3d 49 (Ct. App. 2013) to support the existence of a legal duty owed by PNC to Punay. In *Lueras v. BAC Home Loans Servicing, LP*, a California court of appeal held that "a loan modification is the renegotiation of loan terms, which falls squarely within the scope of a lending institution's conventional role as a lender of money." 163 Cal. Rptr. 3d at 67. Accordingly, the court concluded that California law did not support the "imposition of a common law duty to offer or approve a loan modification." *Id.* However, the court also concluded that "a lender does owe a duty to a borrower not to make material misrepresentations about the status of an application for a loan modification or about the date, time, or status of a foreclosure sale. The law imposes a duty not to make negligent misrepresentations of fact." *Id.* at 68.

Punay alleges, "PNC services single-family residential mortgages . . . including the first lien residential mortgage loan for this property." (ECF No. 1 at ¶ 4). The Court concludes that PNC owed a duty to Punay to "not make material misrepresentations about the status of an application for a loan modification or about the date, time, or status of a foreclosure sale." *Lueras*, 163 Cal. Rptr. 3d at 38. Punay alleges that "PNC . . . misrepresented the date, time, and status of Plaintiff's foreclosure sale when PNC's representative Sandra verbally stated that there was not a sale date

specified, followed by assertions that the sale had been postponed to a later unknown date." *Id.* at ¶ 69. The facts alleged in the complaint indicate that the foreclosure sale was postponed at some point after the initial notice of sale was posted. The complaint alleges that a foreclosure sale was initially scheduled for July 11, 2016 but that the current sale date for the property is August 22, 2016. (ECF No. 1 at ¶ ¶ 33, 46). The complaint does not allege that any foreclosure sales has taken place. Under the facts alleged in the complaint, the alleged statements by PNC that the foreclosure sale was postponed do not constitute a misrepresentation. The Court concludes that the alleged facts do not support a reasonable inference that PNC made a "material misrepresentation . . . about the date, time, or status of a foreclosure sale." *Id.*

Punay alleges that PNC further breached its duty "when it materially misrepresented the status of her application for a loan modification by assuring Plaintiff that her application was complete and in good standing." *Id.* at ¶ 69. Punay alleges that PNC representative Sandra "confirmed that the application package was complete" in the June 23, 2016 phone conversation. *Id.* at ¶ 37. Punay alleges, "Subsequent to the conversation with Sandra, Plaintiff received a phone call from a different representative from PNC, Mike, who orally told her that the modification documents had not been completed." *Id.* at ¶ 40. The Court concludes that Punay provides sufficient facts to support a reasonable inference that PNC made a material misrepresentation about the status of Punay's loan modification application.

In order to state a claim for negligent misrepresentation, Punay must also allege damages resulting from Punay's justifiable reliance on the misrepresentation. *See Nat'l Union Fire Ins. Co.*, 89 Cal. Rptr. 3d at 483. PNC contends that the complaint fails to identify with specificity damages resulting from any alleged negligent misrepresentation because there are no allegations that foreclosure occurred and any damages related to the foreclosure were caused by Punay's failure to make her monthly mortgage payments. Punay alleges that she "relied to her detriment on the assurances that she was being considered for a loan modification and there was no immediate threat

of foreclosure" and that she "suffered harm due to reliance on PNC's misrepresentation of a postponed sales date." (ECF No. 1 at ¶¶ 74-75). Punay alleges that she "extended time, money, and effort" pursuing the loan modification from PNC.[1] *Id.* at ¶ 63. The complaint does not allege that any foreclosure has occurred. The complaint does not provide facts sufficient to support a reasonable inference that Punay sustained damages resulting from PNC's alleged misrepresentation that the loan modification was complete or that the sale date was postponed. The Court concludes that Punay fails to state a claim for negligent misrepresentation.

### D. California Civil Code section 2924.10

PNC contends that Punay fails to state a claim under section 2924.10 because Punay fails to allege that PNC's alleged failure to provide a written acknowledgment of the loan modification was material. PNC contends that Punay fails to allege that the lack of written acknowledgment has caused damage or prejudice or "interfered with her ability to obtain a modification of her loan." (ECF No. 4-1 at 11). Punay contends that PNC's failure to provide written acknowledgment of the June 2, 2016 loan application affected the loan modification process and therefore constitutes a material violation. (ECF No. 6 at 13).

California Civil Code section 2924.10 of the Homeowner's Bill of Rights provides, "When a borrower submits a complete first lien modification application or any document in connection with a first lien modification application, the mortgage servicer shall provide written acknowledgment of the receipt of the documentation within five business days of receipt." Cal. Civ. Code § 2924.10(a). The statute requires that, in its initial acknowledgment of receipt of the loan modification application, a mortgage servicer include certain information such as a description of the loan modification process, any deadlines affecting the processing of the modification application, any expiration dates for submitted documents, and any deficiency in the

---

[1] This allegation as to damages is included in Punay's allegations as to promissory estoppel but are incorporated by reference in Punay's negligent misrepresentation claim. (ECF No. 1 at ¶ 64).

1 application. *Id.* "For the purposes of this section, a borrower's first lien loan
2 modification application shall be deemed to be 'complete' when a borrower has
3 supplied the mortgage servicer with all documents required by the mortgage servicer
4 within the reasonable timeframes specified by the mortgage servicer." Cal. Civ. Code
5 § 2924.10(b).

6 The Homeowner's Bill of Rights provides that borrowers may bring an action
7 based on a *material* violation of section 2924.10. *See* Cal Civ Code § 2924.12. "If a
8 trustee's deed upon sale has not been recorded, a borrower may bring an action for
9 injunctive relief to enjoin a material violation of Section . . . 2924.7[.]" Cal Civ. Code
10 § 2924.12(a)(1). After a trustee's deed upon sale has been recorded, a mortgage
11 servicer, mortgagee, trustee, beneficiary, or authorized agent shall be liable to a
12 borrower for actual economic damages . . . resulting from a material violation of Section
13 . . . 2924.10[.]" Cal. Civ. Code § 2924.12(b)(1). "Courts have interpreted the term
14 'material' to refer to whether the alleged violation affected a plaintiff's loan obligations
15 or the modification process." *Cornejo v. Ocwen Loan Servicing, LLC*, 151 F. Supp. 3d
16 1102, 1113 (E.D. Cal. 2015); *see also Hsin-Shawn Sheng v. Select Portfolio Servicing,*
17 *Inc.*, No. 2:15-CV-0255-JAM-KJN, 2015 WL 4508759, at *3 (E.D. Cal. July 24, 2015);
18 *Gonzales v. Citimortgage, Inc.*, No. C-14-4059 EMC, 2015 WL 3505533, at *6 (N.D.
19 Cal. June 3, 2015).

20 Punay alleges that she submitted a "full and complete loan modification
21 application" on June 2, 2016. (ECF No. 1 at ¶ 81). Punay alleges that a PNC
22 representative "confirmed the application was complete" during a telephone
23 conversation on June 23, 2016; however, Punay alleges that to date she has not received
24 a written acknowledgment or updates regarding the status of her application. *Id.* at ¶¶
25 37,41. The Court concludes that Punay has alleged sufficient facts to support a
26 reasonable inference that she submitted a completed application and did not receive a
27 written acknowledgment within 5 business days of the receipt as required under section
28 2924.10. As to the materiality of this alleged violation, Punay alleges that "PNC's

failure to state whether or not documentation is received prevents her from being evaluated for a loan modification." *Id.* at ¶ 87. Assuming all factual allegations to be true and drawing all reasonable inferences favor of the plaintiff, the Court concludes that Punay alleges facts sufficient to satisfy the materiality requirement of section 2924.12 to state a claim under section 2924.10. The motion to dismiss the cause of action for a violation of California Civil Code section 2924.10 is denied.

### E. California Civil Code Section 2923.7

PNC contends that Punay fails to state a claim for a violation of California civil code section 2923.7 because the complaint does not contain allegations that Punay asked for a single point of contact or allegations that any failure to appoint a single point of contact was a material cause of pecuniary injury. (ECF No. 4-1 at 11).

Punay contends that a mortgage servicer is required to promptly establish a single point of contact and that it is immaterial whether Punay requested a single point of contact. Punay contends that the violation was material because "it affected Plaintiff's ability to have a clear understanding of the status of her application, the actions she needed to take to remove her home from foreclosure proceedings." (ECF No. 6 at 15).

California civil code section 2923.7 provides,

(a) Upon request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact.

(b) The single point of contact shall be responsible for doing all of the following:

(1) Communicating the process by which a borrower may apply for an available foreclosure prevention alternative and the deadline for any required submissions to be considered for these options.

(2) Coordinating receipt of all documents associated with available foreclosure prevention alternatives and notifying the borrower of any missing documents necessary to complete the application.

(3) Having access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative.

> (4) Ensuring that a borrower is considered for all foreclosure prevention alternatives offered by, or through, the mortgage servicer, if any.
>
> (5) Having access to individuals with the ability and authority to stop foreclosure proceedings when necessary.

Cal. Civ. Code § 2923.7. The Homeowner's Bill of Rights provides a private right of action for a *material* violation of section 2923.7. *See* Cal. Civ. Code § 2924.12 (emphasis added). There is a split in authority among district courts as to whether the obligation to establish a single point of contact is triggered by a borrower's request for a single point of contact or a request for a foreclosure prevention alternative. *See Jerviss v. Select Portfolio Servicing, Inc.,* No. 215CV01904MCEKJN, 2015 WL 7572130, at *6 (E.D. Cal. Nov. 25, 2015) (describing the split in authority and concluding that section 2923.7 requires the borrower to request a single point of contact); *Mungai v. Wells Fargo Bank*, No. C-14-00289 DMR, 2014 WL 2508090, at *9 (N.D. Cal. June 3, 2014) ("Under the plain meaning of the statute, a mortgage servicer's obligation to establish a single point of contact is triggered 'upon request from a borrower who requests a foreclosure prevention alternative,' not upon request from a borrower who requests a single point of contact.").

This Court concludes that a mortgage servicer's obligation to establish a single point of contact under section 2923.7 is triggered upon a request for a foreclosure prevention alternative, rather than a request for a single point of contact. *See Major v. Wells Fargo Bank, N.A.*, No. 14CV998-LAB RBB, 2015 WL 2449516, at *4 (S.D. Cal. May 22, 2015) ("However, the statute isn't triggered by a request for a single point of contact; it's triggered by a request for a foreclosure prevention alternative."); *Thomas v. U.S. Bank Nat'l Ass'n*, No. 14 CV 2705 W (JMA), 2015 WL 12434360, at *6 (S.D. Cal. June 24, 2015) (finding that section 2923.7 requires the appointment of a single point of contact upon request for a foreclosure prevention alternative, such as a loan modification).

Punay alleges that she requested a foreclosure prevention alternative, a loan

modification, on June 2, 2016. (ECF No. 1 at ¶ 32). Pursuant to section 2923.7, PNC was required to promptly establish a single point of contact upon receiving the request for the loan modification. Punay alleges that she has been assigned multiple different points of contacts from August 2012 to the date the complaint was filed. Punay alleges she was not aware that PNC representative Sandra was a new point of contact until she personally called PNC for updates on the application. *Id.* at ¶ 91. As to the materiality of the violation required under section 2924.12, Punay alleges that she spoke with different PNC representatives who provided her with "conflicting information" about the loan modification and that consequently the "status of her application and what actions she needed to take" were not clear. *Id.* Punay alleges that she "suffered insurmountable harm by being deprived of a knowledgeable [single point of contact] to coordinate a permanent loan modification for which Plaintiff met the qualifications for." *Id.* at ¶ 95. The Court concludes that Punay alleges sufficient facts to support a reasonable inference that the alleged violation of section 2923.7 was material. *See Arbib v. Nationstar Mortg. LLC*, No. 14CV1439-WQH, 2014 WL 6612414, at *5 (S.D. Cal. Nov. 19, 2014). The motion to dismiss the claim for a violation of California Civil Code section 2923.7 is denied.

**F. California Business & Professions Code Section 17200 *et seq***

PNC contends that Punay failed to allege an unlawful, fraudulent, or unfair business practice under California's Unfair Competition Law ("UCL"). PNC contends that Punay has failed to allege sufficient facts to support any cause of action and has "not alleged with factual specificity an unlawful, unfair or fraudulent business practice which falls within the purview of California Business & Professions Code section 17200." (ECF No. 4-1 at 12-13). PNC contends that Punay lacks standing to assert a claim under the UCL because she has failed to allege that she lost money or property

as a result of PNC's conduct.² *Id.* at 13.

Punay contends that PNC violated the UCL by "negligently misrepresent[ing] material facts regarding the status and review of Plaintiff's modification application." (ECF No. 6 at 16). Punay contends that PNC engaged in unlawful conduct in violation of the UCL through its violations of California Civil Code sections 2923.6, 2924.10, 2923.7 as well as violations of "common law theories for promissory estoppel and negligent misrepresentation." *Id.* Punay contends that PNC engaged in a "fraudulent practices that is likely to deceive the general public and many other homeowners in Plaintiff's position" through PNC's "pattern of denying Plaintiff for a loan modification." *Id.* at 16-17. Punay contends that she " has suffered harm for which she can receive restitution." *Id.* at 17.

The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. A plaintiff alleging a UCL claim must satisfy UCL standing requirements. *See Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 n.4 (9th Cir. 2009). Private standing under the UCL is limited to "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. Two requirements are necessary to satisfy standing under the UCL: "a party must now (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that th[e] economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 885 (Cal. 2011).

The UCL section of the complaint does not contain any specific allegations of

---

² In its reply, PNC additionally contends that Punay's UCL claims are barred by a statute of limitations. (ECF No. 7 at 6). Because PNC raises this argument for the first time in its reply brief and Punay has not had an opportunity to respond, the Court will not consider the statute of limitations argument at this time. *See United States v. Bohn*, 956 F.2d 208, 209 (9th Cir.1992) (noting that courts generally decline to consider arguments raised for the first time in a reply brief); *Visant Corp. v. Barrett*, No. 13CV389 WQH WVG, 2013 WL 3450512, at *9 (S.D. Cal. July 9, 2013) (declining to consider an argument raised for the first time in a reply brief).

injury suffered and Punay's opposition to the motion to dismiss does not point to any specific allegations of harm in the complaint. Punay alleges that a foreclosure sale was recorded but does not allege that a foreclosure sale has occurred. Punay's only allegation specific to a loss of property or money is in relation to her promissory estoppel claim. Punay alleges, "As to harm, Plaintiff extended time, money and effort on pursuit of this foreclosure alternative." (ECF No. 1 at 14). The Court concludes that this allegation is insufficient to establish that Punay suffered an economic injury as a result of PNC's unfair competition. *See Kwikset Corp.*, 246 P.3d at 887 (holding that the second factor for standing under the UCL requires a "showing of a causal connection or reliance on the alleged misrepresentation"); Cal. Bus. & Prof. Code § 17204. The Court concludes that the facts alleged in the complaint are insufficient to establish that Punay has standing to bring a cause of action under the UCL.

**V. Conclusion**

IT IS HEREBY ORDERED that the motion to dismiss filed by Defendant PNC is granted in part and denied in part. (ECF No. 4). Punay's causes of action against Defendant PNC for the violation of California Civil Code section 2923.6, promissory estoppel, negligent misrepresentation, and the violation of Business and Professions Code § 17200 are dismissed without prejudice. The motion to dismiss is denied in all other respects.

DATED: May 31, 2017

**WILLIAM Q. HAYES**
United States District Judge